UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXICON GROWTH LP, | Case No.  26-cv-02230-SVK |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO DISMISS COMPLAINT** |
| DENIZ TORTOP, | Re: Dkt. No. 15 |
| Defendant. | |

United States District Court
Northern District of California

## I.    INTRODUCTION AND BACKGROUND

On or about December 12, 2025, non-party Forge Securities LLC ("Forge"), a broker, arranged a transaction in which Defendant Deniz Tortop ("Tortop") would sell Plaintiff Lexicon Growth LP ("Lexicon") 21,500 shares of common stock in non-party Cerebras Systems, Inc. ("Cerebras") for $41.02 per share.  Dkt. 1 (Complaint) ¶ 1 and Ex. A (Forge Transaction Summary).  The deal terms were included in a Transaction Summary issued by Forge (Ex. A to Complaint) as well as a Stock Transfer Notice (Ex. B to Complaint).  Complaint ¶ 1.   The Stock Transfer Notice (the "Notice") included as an attachment a Stock Transfer Agreement (the "Agreement").  *See* Ex. B to Complaint.  The stock sale transaction was to be settled through the Nasdaq Private Market ("NPM").  Complaint ¶ 1.

Cerebras is a privately-held company whose shares are not publicly traded.  *See* Complaint ¶ 11.  Cerebras drafted the Notice and the attached Agreement.  *Id.* ¶ 13.  Cerebras was a named party to both the Notice and the Agreement, and both documents defined the term "Company" to mean Cerebras.  Ex. B to Complaint at PDF pp. 4, 12.  The signature page in the Notice also included a signature line for Cerebras.  *Id.* at PDF p. 8.

Provisions of the Notice that are relevant to this litigation include the following:

- Lexicon agreed to complete and deliver to Cerebras a Know Your Customer form

United States District Court
Northern District of California

("KYC Form") and to provide any documentation and information reasonably requested by Cerebras in connection with the KYC Form.  Ex. B to Complaint at PDF p. 4 ¶ A.  Cerebras "reserve[d] the right, in its sole discretion, to not proceed with the transaction contemplated" in the Notice and Agreement "upon review of [Lexicon's] completed KYC Form and any related documentation and information provided by [Lexicon]."  *Id.*

- Following Cerebras's review of the KYC Form and any related documentation and information provided by Lexicon, Cerebras would send Lexicon a confirmation via email that the transaction may proceed.  Lexicon would then have five (5) business days to wire the necessary payments to Tortop and, if applicable, Cerebras.  *Id.* ¶ B.

- The signature page of the Notice, which had signature lines for Tortop, his spouse, Lexicon, and Cerebras, provided that "[t]he Parties hereby accept all terms, conditions, and representations of the Stock Transfer Notice and the Stock Transfer Agreement, without any modification to the form provided by the Company."  *Id.* at PDF p. 8.

The Agreement was attached as Attachment B to the Notice and contains the following provisions that are relevant to this litigation:

- "On the Effective Date and subject to the terms and conditions of this Agreement," Tortop hereby sells to Lexicon the specified shares at the specified purchase price, and Cerebras "hereby consents to such transfer and to the extent the Company has a right of first refusal, it waives its right of first refusal with respect to such transfer, it being expressly understood that such rights, if any, shall continue to be applicable to other proposed transfers of the Shares hereafter."  Ex. B to Complaint at PDF p. 12 ¶ 1.

- Lexicon "shall have completed and delivered to [Cerebras] a Know Your Customer Form," a copy of which was attached.  *Id.* at PDF p. 13 ¶ 2.2(b).

- Cerebras "did not facilitate and has not been a party to any negotiations between

United States District Court
Northern District of California

[Lexicon] and [Tortop], and [Cerebras] makes no representation or warranty as to the advisability or the legality of the transfer of the Shares hereunder." *Id.* at PDF p. 15 ¶ 3.9; *see also id.* at PDF p. 17 ¶ 4.8.

- "All consents, approvals, authorizations and orders required for the execution and delivery of this Agreement and the transfer of the Shares under this Agreement have been obtained and are in full force and effect." *Id.* at PDF p. 16 ¶ 4.5.
- "This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements… This Agreement shall not be effective until signed by all parties hereto, including the Company." *Id.* at PDF p. 21 § 9.7.

Lexicon signed and returned the Transaction Summary to Forge on or about December 11, 2025. Complaint ¶ 12 and Ex. A. Lexicon alleges on information and belief that Tortop signed and returned a mirror image Transaction Summary to Forge. *Id.* On or about December 13, 2025, Lexicon and Tortop executed the Stock Transfer Notice. *Id.* ¶ 13 and Ex. B. On or about December 16, 2025, Forge submitted the Stock Transfer Notice to Cerebras. Complaint ¶ 18.

Cerebras ultimately signed the Notice on or about January 16, 2026. *Id.* ¶ 23. Before Cerebras did so, however, Tortop informed Forge and the NPM that he wanted to cancel the stock sale. In a January 5, 2026 email to Forge and the NPM, Tortop stated that he "would like to back out of this transaction" because he "no longer want[s] to sell at this price point." *Id.* ¶ 20 and Ex. C. In a follow-up email on January 12, 2026, Tortop reiterated his request to cancel the transaction and took the position that because Cerebras had not yet signed the Notice, he had the right to cancel the sale. Complaint ¶ 21 and Ex. C.

Lexicon tendered the full transfer price to the NPM on January 20, 2026. Complaint ¶ 24. Tortop sent an email to the NPM on the same day, providing "final notice that I have withdrawn my offer to sell 21,500 shares of Cerebras Systems Inc. … to Lexicon Growth" and stating that "[t]his revocation was first communicated to all parties on January 5, 2026, and reaffirmed on

3

January 12, 2026." *Id.* ¶ 25 and Ex. D.

In a January 29, 2026 email, Cerebras informed Tortop and Lexicon that "Cerebras' interest in these secondary stock transactions is limited to our right of first refusal (ROFR) and review of the KYC form." Complaint ¶ 26 and Ex. E. Cerebras stated that "[s]ince the ROFR period has expired, the transaction will proceed as set forth in the mutually executed transfer agreement." *Id.* Cerebras characterized the stock sale as a "private transaction between the buyer and seller." *Id.*

On January 23, 2026 and February 9, 2026, an attorney representing Lexicon sent Tortop letters demanding that he perform the Agreement. Complaint ¶ 27 and Ex. F. Counsel for Tortop stated that Tortop refused to proceed with the trade at the price of $41.02 per share. Complaint ¶ 28.

Lexicon filed this lawsuit on March 13, 2026. The Complaint, which names Tortop as the sole Defendant, contains causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

Now before the Court is Tortop's motion to dismiss the Complaint for failure to state a claim. Dkt. 15. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 8, 14. This matter is suitable for determination without a hearing. Civ. L.R. 7-1(b).

For the reasons that follow, Tortop's motion to dismiss is **GRANTED**. The first cause of action is **DISMISSED WITHOUT LEAVE TO AMEND**, and the second cause of action is **DISMISSED WITH LEAVE TO AMEND.**

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is

United States District Court
Northern District of California

not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## III.     DISCUSSION

### A.     First Cause of Action:  Breach of Contract

Lexicon's first cause of action alleges breach of the Notice. *See* Complaint ¶ 35 ("Defendant has breached and repudiated the Stock Transfer Notice by refusing to proceed with the trade and refusing to accept the transfer price"); *see also* Complaint ¶¶ 30-36. The Parties agree on the chronology of events outlined above but disagree about whether Cerebras' execution of the Notice was a condition precedent to *formation* of the stock sale contract or a condition precedent to *performance* of the contract. If Cerebras' execution of the Notice was a condition precedent to *formation* of the contract, Tortop's revocation of his offer to sell shares to Lexicon was effective because it occurred before Cerebras executed the contract. *See Los Angeles Rams Football Club v. Cannon,* 185 F. Supp. 717, 724 (S.D. Cal. 1960). If Cerebras' execution of the Notice was a condition precedent to *performance* of the contract, the contract was formed when Tortop and Lexicon signed it, and Tortop's attempt to revoke his offer was not effective. *See id.*

A threshold issue is what law governs these contract questions. The Agreement states that it will be governed by and construed in accordance with California law. Ex. B to Complaint at PDF p. 20 ¶ 9.2  If no contract was formed, however, that choice of law provision would not apply. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (stating that whether the choice of law provision in a contract applies depends on whether there was a contract

in the first place).  Nevertheless, the Parties have briefed the issues under California law, they have not argued that the result would vary depending on what law applies, and the Ninth Circuit has recognized that the "[f]undamental precepts of contract interpretation under California law" are "not unique to California."  *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020).

Turning to the contract issues, "[t]here are two species of conditions precedent: conditions precedent to *formation* and conditions precedent to *performance*."  *Int'l Bhd. of Teamsters,* 957 F.3d at 1043 (quoting *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 189–190 (1980) (emphasis in original)).  "[W]here a condition precedent to *formation* is not satisfied, the proposed bargain between the parties does not become a binding contract."  *Int'l Bhd. of Teamsters,* 957 F.3d at 1043 (citations omitted; emphasis added).  "Conversely, if a condition precedent to *performance* fails, the parties still have a contract, but they lose the right to enforce at least some of its terms."  *Id.* (citation omitted; emphasis added).

"[P]arties may make the creation of a contract subject to a condition precedent[,]" which is "an uncertain event that must happen before the contractual right accrues or the contractual duty arises."  *Id.* (quoting *Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.,* 195 Cal. App. 3d 1331, 1345 (1987) and *Platt Pac., Inc. v. Adelson*, 6 Cal. 4th 307, 313 (1993)).  "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract." *Int'l Bhd. of Teamsters,* 957 F.3d at 1043 (quoting *Realmuto v. Gagnard*, 110 Cal. App. 4th 193, 199, 1 Cal.Rptr.3d 569 (2003)).  Conditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not invoke any "required magical incantation."  *Id.* (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 626 (9th Cir. 1991)).  Although a contract provision "will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable," the "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Int'l Bhd. of Teamsters*, 957 F.3d at 1044 (citations omitted).  Unless "reasonable persons would have understood that the agreement would not be effective when originally signed," approval is a condition precedent to the party's duty to perform, not a condition precedent to the formation of

United States District Court
Northern District of California

the contract. *Jacobs*, 104 Cal. App. 3d at 187, 189–190.

Here, the dispute as to whether Tortop's attempt to revoke his offer to sell shares was effective centers on language in the Agreement attached to the Notice stating that it "shall not be effective until signed by all parties hereto, ***including the Company***." Dkt. 1-1 at PDF p. 21 § 9.7 (emphasis added); *see also* Dkt. 15 at 5; Dkt. 16 at 14; Dkt. 17 at 3-4. Situations where a third party's approval has been found to be essential to the formation of the contract include where "the terms of the document make it so." *Cannon,* 185 F. Supp. at 721. In *Cannon*, a football team sued a player who had signed agreements to play for the team in 1960, 1961, and 1962 and then attempted to revoke any offer he may have made to play for the team. *Id.* at 718-20. Each written agreement between the parties contained a clause that stated: "This agreement shall become valid and binding upon each party hereto only when, as and if it shall be approved by the [National Football League] Commissioner." *Id.* at 721. The NFL Commissioner signed the 1960 contract before the player tried to revoke it, but he did not sign the 1961 and 1962 contracts before the player's revocation. The court held that "until approved" by the Commissioner, "these instruments are, at most, only offers" and that the offers pertaining to 1961 and 1962 were "unquestionably revoked." *Id.* at 723. The court explained that "[a]pproval by the Commissioner is essential to the formation of a contract here and this is so because the terms of the document make it so." *Id.* at 721-22. The court reasoned that the clause requiring the Commissioner's approval:

> is too definite to be ignored. It jumps out at you. The words employed are too strong to permit of ambiguity. Their selection was obviously made with great care so that there would be no dispute about their meaning, and this court attaches to them the only meaning it can— that is, that the agreement shall only become valid and binding if, as and when approved by the Commissioner.

*Id.* at 722.

In *Roth v. Garcia Marquez*, the Ninth Circuit analyzed a letter operating as an option contract, with a clause stating that the option "shall commence upon signature by Gabriel Garcia Marquez to the formal agreement and the return of said signed agreement to me or Richard Roth, at which time the option payment shall be made to you as agent for Gabriel Garcia Marquez."

942 F.2d at 619. The court concluded that "Garcia Marquez' signature was required for the contract to be binding" and therefore operated as a "clear condition precedent" to the formation of a contract. *Id.* at 626-27. The court rejected the argument that the same words found in the contract in *Cannon*—"only when, as and if"—were necessary to create a condition precedent to formation, because those words "are not a required magical incantation." *Id.* at 626.

The contract at issue in *Energy Monster, Inc. v. Monster Energy Co.*, stated that the contract "is effective only after it has been signed" by two parties and "is effective as of the last date listed in the signature block below (the 'Effective Date')." 2022 WL 3137729, at *5 (C.D. Cal. May 19, 2022). The court stated that "[c]ourts have found that similar provisions condition contract formation on execution" and concluded likewise. *Id.* at *5, 7. In concluding that this language was a condition precedent to contract formation, the court rejected an argument by one party, TEM, that the contract was distinguishable from cases like *Cannon* and *Roth* due to use of the term "effective." *Id.* at *5. "TEM fails to explain how an ineffective, or non-operative, agreement is still enforceable [, n]or does it cite case law or proffer evidence from the parties' negotiations to support this interpretation of 'effective.'" *Id.* "Courts often determine contract formation with when an agreement becomes 'effective.'" *Id.* (citations omitted). "Therefore, the most straightforward reading of the phrase, 'This Agreement is effective only after it has been signed,' is that the parties intended to create a binding contract only after both parties had signed the Agreement." *Id.* It is "inconsequential" that the provision states "effective," rather than "valid" or "binding." *Id.*

The contract at issue in this case, specifically the Notice with its attachments, which include the Agreement, unambiguously states that it "shall not be effective until signed by all parties hereto, including the Company." Ex. B to Complaint at PDF p. 21 ¶ 9.7. In light of this language and under the legal authority discussed above, Cerebras' signature on the document was a condition precedent to contract formation because "the terms of the document make it so." *See Cannon,* 185 F. Supp. at 721. Accordingly, Tortop's revocation of his offer to sell shares to Lexicon was effective because the Parties agree that the revocation occurred before Cerebras signed the Notice. Where, as here, the Court finds as a matter of law that the revocation was

United States District Court
Northern District of California

effective, dismissal of Lexicon's claim for breach of contract is appropriate. *See Roth*, 942 F.2d at 628 (affirming order granting motion to dismiss where as a matter of law a condition precedent was unfulfilled).[1]

Although district courts should grant leave to amend liberally, it is appropriate to deny leave to amend where amendment would be futile. *See id.* (affirming order dismissing complaint without leave to amend). Here, because the Parties agree on the contents of the contract documents and the chronology of events, the Court concludes that it would be futile for Lexicon to attempt to overcome by amendment the finding that, as a matter of law, Cerebras' execution of the Agreement was a condition precedent to contract formation. Accordingly, the first cause of action is **DISMISSED WITHOUT LEAVE TO AMEND.**

**B.      Second Cause of Action:  Breach of the Implied Covenant of Good Faith and Fair Dealing**

Lexicon's second cause of action for breach of the implied covenant of good faith and fair dealing is dependent upon the existence of a valid contract. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1391 (1991) (holding that ability to plead implied covenant of good faith and fair dealing "necessarily depends upon the existence of a valid and existing contractual relationship"). In the Complaint, Lexicon bases its claim for breach of the covenant of good faith and fair dealing on the Trade Confirmation issued by Forge rather than on the Notice. Complaint ¶ 38. Lexicon argues in its opposition to the motion to dismiss that "even if the Sales Agreement was not itself a binding agreement … the parties had reached an earlier binding oral agreement to proceed with the trade which was memorialized in the Trade Confirmations executed by both parties memorializing the purchase price and number of shares." Dkt. 16 at 16 (citing Complaint ¶¶ 38-42). It characterizes its implied covenant claim as an "alternative" theory to its claim for breach of the Notice. Dkt. 16 at 16.

Tortop's motion to dismiss argued that Lexicon's implied covenant claim fails because

---

[1] Lexicon argues in its opposition to the motion to dismiss that Tortop was estopped from revoking his offer because Lexicon detrimentally relied on the offer. Dkt. 16 at 8-9. Lexicon does not plead this theory in the Complaint, so the Court does not address Lexicon's arguments on this issue.

either (1) the claim for breach of contract claim fails or (2) even if Lexicon has successfully alleged a breach of contract, the implied covenant claim is "superfluous" because it "simply restates" Lexicon's breach of contract claim. Dkt. 15 at 12. Tortop's opening brief did not acknowledge or address any distinction between claims based on the Notice and claims based on the Trade Confirmation. *Id.*

Lexicon is correct that Tortop's opening brief failed to address Lexicon's "alternative" allegations that the Parties had already reached a binding agreement before they executed the Notice with the attached Agreement. *See* Dkt. 16 at 17. However, Lexicon's opposition has muddied the waters by claiming that the Parties entered into an oral agreement. *Id.* at 16-17. The Complaint itself does not refer to any oral agreement between the Parties. In its reply brief, Tortop offers various arguments as to why an implied covenant claim based on an oral contract would be defective. Dkt. 17 at 8-10.

Because of the tension between the allegations in the second cause of action in the Complaint and Lexicon's characterization of those allegations in its opposition to the motion to dismiss, on the present record the Court cannot readily evaluate the Parties' arguments as to whether the second cause of action satisfies the applicable pleading standards. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021) (citation omitted). Accordingly, the Court **GRANTS** the motion to dismiss the second cause of action on the grounds that it does not adequately articulate Lexicon's theory of breach of the implied covenant of good faith and fair dealing. Because it is not clear from the present record that an attempt to amend this cause of action would be futile, the second cause of action is **DISMISSED WITH LEAVE TO AMEND.**

IV.    **CONCLUSION**

For the foregoing reasons, the Court **ORDERS** as follows:

1.    Tortop's motion to dismiss is **GRANTED**. The first cause of action for breach of contract based on the Notice is **DISMISSED WITHOUT LEAVE TO AMEND.** The second cause of action for breach of the implied covenant of good faith and

fair dealing is **DISMISSED WITH LEAVE TO AMEND.**

2. If Lexicon wishes to attempt to address the deficiencies identified in this order, it may file a First Amended Complaint ("FAC") by **July 16, 2026.**  The FAC must address whether this Court has personal jurisdiction over any defendants and whether venue here is proper.

3. Following the filing of a FAC, Tortop must file a response by **July 30, 2026.**

4. If Tortop responds by filing a motion to dismiss the FAC, the normal briefing schedule of Civil Local Rule 7-3 will apply.  The Court will inform the Parties if a hearing is necessary.

5. An Initial Case Management Conference will be held on **October 13, 2026 at 9:30 a.m.**  The Joint Case Management Statement is due **October 6, 2026.**

**SO ORDERED.**

Dated: June 25, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California