United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEXICON GROWTH LP,
Plaintiff,

v.

DENIZ TORTOP,
Defendant.

Case No. 26-cv-02230-SVK

**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION**

Re: Dkt. No. 32

Plaintiff Lexicon Growth LP's original complaint in this action contained two causes of action: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. Dkt. 1. On June 25, 2026, the Court granted Defendant Deniz Tortop's motion to dismiss both causes of action. Dkt. 24 ("Dismissal Order"). The Dismissal Order granted Lexicon leave to amend the second cause of action for breach of the implied covenant of good faith and fair dealing but dismissed the first cause of action for breach of contract without leave to amend. *Id.* The Court subsequently granted Lexicon's request for leave to file a motion for reconsideration of the Dismissal Order. Dkt. 28, 29.

Now before the Court is Lexicon's motion for reconsideration, which Tortop opposes. Dkt. 32 (motion), 33 (opposition), 34 (reply). All Parties in this action have consented to a magistrate judge. Dkt. 8, 14. The motion for reconsideration is suitable for determination without a hearing. Civ. L.R. 7-1(b). For the reasons that follow, Lexicon's motion for reconsideration is **GRANTED** insofar as it seeks reconsideration of the Court's denial of an opportunity for Lexicon to add a new cause of action for promissory estoppel and **DENIED** in all other respects. Lexicon's request that the Court certify the Dismissal Order for immediate appeal is **DENIED**.

## I. LEGAL STANDARD

"A motion for reconsideration must (1) demonstrate reasons why the court should reconsider its prior decision and (2) must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2021 WL 11714935, at *1–2 (N.D. Cal. Dec. 7, 2021) (internal quotation marks and citations omitted). "[R]econsideration is appropriate if (1) the district court is presented with 'newly discovered evidence,' (2) the district court 'committed clear error or the initial decision was manifestly unjust,' or (3) 'if there is an intervening change in controlling law.'" *Id.* (quoting *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004)). A motion for reconsideration should not repeat argument made in connection with the order for which reconsideration is sought. *Duarte v. Freeland*, No. C-05-2780 EMC, 2008 WL 496490, at *5 (N.D. Cal. Feb. 21, 2008); *see also* Civ. L.R. 7-9(c).

## II. DISCUSSION

Lexicon's motion for reconsideration challenges the Dismissal Order as to the first cause of action for breach of contract. Dkt. 32. Specifically, Lexicon asserts that the Court erred in (1) determining that Cerebras's approval was a condition precedent to contract formation; (2) failing to address California Civil Code § 1586; and (3) denying Lexicon leave to add a promissory estoppel claim by amending the breach of contract cause of action, adding a new cause of action, or both. *Id.* Lexicon further requests that if the Court denies the motion for reconsideration, it certify the Dismissal Order for immediate appeal. *Id.*

### A. Cerebras's approval as condition precedent to contract formation

Lexicon's motion for reconsideration acknowledges that the Dismissal Order "correctly identifies the distinction between conditions precedent to formation and conditions precedent to performance" but argues that the Court erred in concluding that Cerebras's approval of the stock trade was a condition precedent to formation, not performance. Dkt. 32 at 3 (citing Dkt. 24 at 6-7). Lexicon challenges the Court's reliance on *Los Angeles Football Club v. Cannon*, 185 F. Supp. 717 (S.D. Cal. 1960). Dkt. 24 at 4-9. Lexicon relies on the Corbin treatise and various cases—with particular emphasis on a New Jersey Supreme Court case, *In re Matter of Fairfield General Corp.*, 75 N.J. 398 (1978), that has never been cited by a California state or federal court—in arguing that the *Cannon* line of cases "represents a discredited minority view that has

been expressly rejected by the weight of authority" and that "[t]he Court should reconsider its reliance on *Cannon* and instead follow the majority rule as applied in the California cases" discussed in the motion for reconsideration. Dkt. 32 at 9.

The existence of some conflicting authority does not render erroneous the Court's decision to rely upon *Cannon*. Moreover, Lexicon overstates the purported conflict regarding *Cannon*. In both its opposition to Tortop's motion to dismiss and again in its motion for consideration, Lexicon relied heavily on *Jacobs v. Freeman*, 104 Cal. App. 3d 177 (1980) as an example of cases where courts have "rejected attempts by one party to cancel the deal while the third party's approval is being sought." *See* Dkt. 16 at 10-11; Dkt. 32 at 6-7. However, *Jacobs* stated that where "reasonable persons would have understood that the agreement would *not* be effective when originally signed," the rule is that "a contract does not arise when an agreement is executed with the understanding it will not become operative until approved by another person or body." *Jacobs*, 104 Cal. App. 3d at 189; *see also Frankel v. Board of Dental Examiners*, 46 Cal. App. 4th 534, 549 (1996) (explaining that the rule permitting revocation prior to third-party approval applies "only where it can be said that reasonable persons would have understood that the agreement would not be effective when originally signed"). Citing *Cannon* as a case in which the rule applied, *Jacobs* recognized that in *Cannon*, "the evidence was clear that the parties intended the contract to take effect only when the necessary approval was obtained . . . [because] the agreement expressly provided" for that. *Id.* at 189–90.

As explained in the Dismissal Order, the Agreement in this case is similar to the contract in *Cannon* because the Agreement unambiguously and expressly provided that it would only result in a contract once Cerebras signed. Dkt. 1-1 at PDF p. 21 § 9.7 ("This Agreement shall not be effective until signed by all parties hereto, including the Company"). *See* Dkt. 24 at 7-10. Lexicon has not shown that the Court erred in relying on *Cannon* and the other cases cited in the Dismissal Order in this case, which presents a similar factual scenario. As noted above, both *Jacobs* and *Frankel* noted that *Cannon* applies where, as here, the contract at issue expressly provided that it would only result in a contract once Cerebras signed. The other California case upon which Lexicon relies, *Bowen v. Workers' Comp. Appeals Board*, also cited and extensively

discussed *Cannon*, even though it found the facts of the worker's compensation case before it distinguishable from the contract claim at issue in *Cannon*. 73 Cal. App. 4th 15, 21 (1999).

Lexicon also argues that it was error for the Court to decide the issue of whether Cerebras's signature was a condition precedent to formation on a motion to dismiss because the Parties' intent is paramount. Dkt. 32 at 10-11. Lexicon argues that the Court instead should permit the breach of contract claim to proceed so that it can present extrinsic evidence concerning the Parties' intent. *Id.* at 10.

Courts do not consider parol evidence or extrinsic evidence of the parties' intentions where the relevant contractual provision is unambiguous. *See Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1041 n. 1 (9th Cir. 2020). "'[C]ourts will not strain to create an ambiguity where none exists,' '[n]or is "[t]he language of a contract ... made ambiguous simply because the parties urge different interpretations." *Id.* at 1044 (internal quotation marks and citations omitted). Here, Cerebras was a named party to both the Notice and the Agreement, and both documents defined the term "Company" to mean Cerebras. Ex. B to Complaint at PDF pp. 4, 12. Again, the Agreement states: "This Agreement shall not be effective until signed by all parties hereto, including the Company." Ex. B to Complaint at PDF p. 21, § 9.7.

In arguing that the Court nevertheless should consider extrinsic evidence as to the Parties' intent regarding the Agreement, Lexicon relies on the Ninth Circuit's recent decision in *County of San Bernardino v. Ins. Co. of the State of Pennsylvania*, 174 F.4th 597 (9th Cir. 2026), in which the court stated that "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Id.* at 605. However, *San Bernardino* reaffirmed that the parties' intent "is to be inferred, if possible solely from the written provisions of the contract" and "[i]f contractual language is clear and explicit, it governs." *Id.* at 604-605.

In *San Bernardino*, which concerned aggregate limits provisions in several insurance policies, the court considered extrinsic evidence after finding that both sides offered reasonable readings of the policy language and thus "for that reason, the policies are ambiguous." *Id.* 605. Here, Lexicon has not offered a reasonable alternative reading of the unambiguous language that

United States District Court
Northern District of California

United States District Court
Northern District of California

required Cerebras's signature before the contract became effective.[1]

Moreover, in considering what extrinsic evidence should be considered, the Ninth Circuit stated that "the most important question of intent is 'at the time the contract is formed.'" *Id.* at 609 (holding that "a post-contract judicial decision could not have informed the parties' understanding of the policy'" (citations omitted)). Here, the only extrinsic evidence identified by Lexicon is email identified in the Complaint in which "Cerebras explain[ed] its limited role in such a 'private transaction between the buyer and seller.'" Dkt. 32 at 10 (quoting Dkt. 1 ¶ 26). However, that email is dated January 29, 2026, which was after the date of the Agreement and indeed after Tortop communicated the revocation of his offer on January 5, 2026. Dkt. 1 ¶¶ 13, 20, 26 and Exs. B, C, and E.

Lexicon therefore has failed to establish that the Court should have considered extrinsic evidence on the issue of the Parties' intent and has failed to identify extrinsic evidence that would properly support its interpretation of the Agreement.

Lexicon does not present any new facts in its motion for reconsideration, nor does it identify any change in the law. Instead, it reiterates facts from the complaint that were already before this Court and argues that the Court should have drawn different legal conclusions based on those facts. In sum, Lexicon has failed to demonstrate that the Court erred either in concluding that Cerebras's signature was a condition precedent to contract formation or in deciding this issue on a motion to dismiss. Accordingly, Lexicon's motion for reconsideration of this issue is **DENIED**.

### B. California Civil Code § 1586

Lexicon argues that the Court should reconsider the Dismissal Order because the order did not address California Civil Code § 1586. Dkt. 32 at 2. Section 1586 provides that a proposal is revoked "[b]y the communication of notice of revocation by the proposer to the other party … before his or her acceptance has been communicated to the former." Lexicon has cited § 1586 in both its opposition to the motion to dismiss and in its motion for reconsideration in support of the

[1] Lexicon has not addressed Tortop's arguments that California law permits privately-held companies such as Cerebras to "protect themselves by requiring company approval prior to any transfer of shares." Dkt. 33 at 4-5.

proposition that an offeror may revoke its offer "at any time before its acceptance is communicated to the proposer, but not afterwards." Dkt. 32 at 11 (citing Dkt. 16 at 6). According to Lexicon, if the statute "is applied according to its plain terms [] Defendant's offer became irrevocable once Lexicon accepted it." Dkt. 32 at 11. Lexicon further argues that if Tortop was not permitted to revoke his offer under § 1586 because Lexicon had already accepted it, "whether Cerebras's approval is a condition precedent to formation or performance would be irrelevant because Lexicon would prevail either way." *Id.* at 1. Tortop tacitly concedes that the Dismissal Order did not expressly address § 1586 but argues that "the Court already implicitly considered and dispatched with Lexicon's argument." Dkt. 33 at 10 (citing Dismissal Order at 8-9).

The primary case Lexicon cites in favor of its argument regarding § 1586 is *T.M. Cobb Co. v. Sup. Ct.*, which cited § 1586 for the general principle that an offer may be revoked prior to an acceptance. 36 Cal. 3d 273, 278 (1984); *see also* Dkt. 32 at 11; Dkt. 16 at 6. That case involved the issue of whether that general principle applied to an offer to compromise in settlement of a lawsuit made pursuant to California Code of Civil Procedure § 998. *T.M. Cobb,* 36 Cal. 3d at 278. *Cobb* considered the question in light of the statutory language, case law, and public policies concerning such offers to compromise and held that offers of compromise may be revoked prior to acceptance. *See id.* at 278-280, 273. *Cobb* does not shed light on whether and how the general principle expressed in § 1586 operates in the different context of the offer in this case, which contained an express requirement (Cerebras's signature) that had to be satisfied before the contract became effective.

Regardless of whether an offeree's acceptance may in some circumstances terminate the offeror's power to revoke the offer, "other circumstances may cause an offer never to ripen into a contractual obligation or may subsequently discharge any contractual obligation that exists." 1 Williston on Contracts § 5:2, *Termination of power of acceptance*. "[I]nherent in the offeror's power as master of the offer is the power to insist that the offer . . . may only be accepted in accordance with the conditions stated by it" and "[t]he rule is, in fact, so axiomatic that it is common for the courts and commentators, when speaking of termination of the power of acceptance, to ignore this means of termination." *Id.* For example, "the nonoccurrence of any

United States District Court
Northern District of California

condition of acceptance under the terms of an offer will terminate the power of acceptance." *Id.* (citing *Cannon* and other cases); *see also* Restatement (Second) of Contracts § 36 (1981) ("an offeree's power of acceptance is terminated by the non-occurrence of any condition of acceptance under the terms of the offer"). Under such circumstances, an offer cannot be "accepted" until the condition is met. *See, e.g., Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir. 1989) ("At most, the February 18 documents constituted an offer by Jackson to accept a loan under the terms specified. That offer was not 'accepted' until Union agreed to fund Jackson's loan itself" (citing § 1586)); *Mendoza v. Outsource, LLC*, No. C101050, 2025 WL 1874427, at *3 (Cal. Ct. App. July 8, 2025) ("Respondent signing the [employment offer] document therefore did not automatically render him employed by appellant" because "[t]he plain language instead establishes several conditions precedent prior to respondent's employment.").

Under the express terms of the Agreement in this case, Cerebras's signature was required before the contract became effective. Thus Lexicon's acceptance, by itself, was not sufficient to create a contract and did not terminate Tortop's right to revoke his offer. Section 1586 does not change this conclusion. Lexicon has failed to demonstrate error in the Court's conclusions, and therefore its motion for reconsideration of this issue is **DENIED**.

### C. Denial of leave to amend

Lexicon argues that in denying it leave to amend the cause of action for breach of contract, the Court failed to consider its alternative argument that Tortop was estopped from revoking his offer because Lexicon had detrimentally relied on it by failing to seek an opportunity to purchase Cerebras shares from another seller at the then-existing market price. Dkt. 32 at 11-13. Lexicon argues that the Court should have given it an opportunity amend the complaint to add this promissory estoppel theory by amending the breach of contract claim, adding a new cause of action for promissory estoppel, or both. *Id.* Tortop challenges the viability of Lexicon's promissory estoppel theory. Dkt. 33 at 11-18.

For the reasons discussed in the Dismissal Order and as further explained above, as a matter of law, Cerebras's execution of the Agreement was a condition precedent to contract formation. Lexicon has not demonstrated any error in the Court's conclusion that any amendment

United States District Court
Northern District of California

to the breach of contract claim would be futile under these circumstances.

However, because the Dismissal Order already granted Lexicon leave to amend its claim for breach of the implied covenant of good faith and fair dealing, the Court finds that the most efficient way to address the Parties' extensive competing arguments regarding the viability of a claim for promissory estoppel is to permit Lexicon to include a new cause of action for promissory estoppel in the forthcoming amended complaint.

Accordingly, to the extent the Dismissal Order prohibited Lexicon from adding a new cause of action for promissory estoppel, the Court **GRANTS** Lexicon's motion for reconsideration and gives Lexicon **LEAVE TO AMEND** the complaint to add a cause of action for promissory estoppel if that claim is factually and legally warranted. By permitting such amendment, the Court expresses no opinion regarding the viability of a promissory estoppel cause of action. The Court **DENIES** Lexicon's motion for reconsideration of the Court's denial of leave to amend the breach of contract cause of action.

**D. Request for certification of Dismissal Order for immediate appeal**

Lexicon argues that if the Court will not reconsider its ruling that Cerebras's signature was a condition precedent to formation, it should certify the Dismissal Order for interlocutory appeal. Dkt. 32 at 13. Certification of an order for interlocutory appeal is appropriate where the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "As indicated by the text of the statute, there are three requirements for certification of an interlocutory appeal: '(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation.'" *Doe v. Regents of Univ. of Cal.*, No. 25-CV-10779-EMC, 2026 WL 3003791, at *1 (N.D. Cal. Oct. 6, 2026) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). "Because § 1292(b) is a departure from the final judgment rule, [the] exception must be construed narrowly." *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019). "[T]he district court should apply the requirements 'strictly' and certify for interlocutory

appeal only when 'exceptional circumstances' justify a departure from the well-established policy of postponing appellate review until after a final judgment." *Id.* "The party seeking certification bears the burden of demonstrating that the requirements are satisfied and that such a departure is warranted." *Id.*

Lexicon has not carried its burden of demonstrating that the requirements to certify the Dismissal Order for immediate appeal are satisfied. Lexicon argues that there is a difference of opinion regarding *Cannon*, but as discussed in the Dismissal Order and in section II.A above even the cases Lexicon cites in support of its argument affirm the applicability of *Cannon* to a situation, like the one here, where the Parties' contract expressly states that third party approval is required before a contract is formed. Lexicon's disagreement with the Court's conclusion that this legal rule applies to the facts of this case does not warrant certification of the Dismissal Order for interlocutory appeal, and its request is therefore **DENIED.**

## III. CONCLUSION

For the reasons discussed, Lexicon's motion for reconsideration is **GRANTED** insofar as reconsideration is necessary to give Lexicon **LEAVE TO AMEND** the complaint to include a claim for promissory estoppel. Lexicon's motion for reconsideration is otherwise **DENIED**, and its request that the Court certify the Dismissal Order for interlocutory appeal is also **DENIED**. The Court **ORDERS** as follows:

1. If Lexicon wishes to attempt to address the deficiencies identified in the Dismissal Order concerning its breach of implied covenant cause of action and/or add a new promissory estoppel cause of action, it must file a First Amended Complaint ("FAC") by **November 13, 2026.** As directed in the Dismissal Order, "the FAC must address whether this Court has personal jurisdiction over any defendants and whether venue here is proper." Dkt. 24 at 11. Lexicon shall file as an exhibit to the FAC a redline comparing the FAC to the original complaint.
2. Tortop must file a response to the FAC by **December 1, 2026.**
3. If Tortop responds by filing a motion to dismiss the FAC, the normal briefing schedule of Civil Local 7-3 will apply. The Court will inform the Parties if a hearing is

necessary.

4. If Tortop responds by filing an answer, the Court will set this matter for an initial case management conference.

**SO ORDERED.**

Dated: October 30, 2026

Susan van Keulen

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California